[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE' MOTION TO STRIKE
The current action is presented in a four-count revised complaint. The first count is a claim for compensatory damages, punitive damages and attorney fees based upon an alleged violation of Section 46a-60(a)(1) of the Connecticut General Statutes (Fair Employment Practices Act). The second count is a claim for compensatory damages based upon allegations of breach CT Page 11456 of contract. The third count is a claim for compensatory and punitive damages based upon an allegation of Intentional Infliction of Emotional Distress. The fourth count is a claim for negligent infliction of emotional distress. The defendant has filed a motion to strike each of these counts.
A reading of the revised complaint reveals the following assertion of facts for consideration by the court in deciding this motion. The plaintiff is a male college graduate with a bachelor's degree in Business Administrative Management. The defendant is a corporation with its principle place of business at One Columbus Place in New Haven, Connecticut. On November 10, 1996, the defendant hired the plaintiff as a clerk in its file room. At all times mentioned herein, the defendant had a written dress code which provided that "dressy shorts or shorts of reasonable lengths may be acceptable only if they are part of a total outfit that presents a professional business-like appearance."
On June 11, 1997, the plaintiff wore shorts to work. Because of the plaintiffs attire, the Director of Human Resources, Thomas Lynch, called him into his office, and in the presence of at least one other individual, ordered him to stand on a chair so that he could look at his legs. Thomas Lynch then stated that the plaintiffs clothing was "not appropriate business attire," and "we would never want somebody like you to represent our company," and further wanted to know the name of the college which the plaintiff had attended "so we don't donate any money to them." Thomas Lynch, however, did state that if the plaintiff were a woman there would be no problem with his attire.
On June 12, 1997, the plaintiff again wore shorts to work and again Mr. Lynch summoned the plaintiff to his office. Mr. Lynch stated to the plaintiff that his attire was "not appropriate for men" and suspended him for the day without pay. The plaintiff alleges that as a result of the foregoing he was constructively discharged and forced to seek other employment.
"The purpose of the motion to strike is to contest . . . the legal sufficiency of the allegations of a complaint . . . to state a claim upon which relief can be granted." (Internal quotation marks omitted.) Peter-Michael, Inc. v Sea Shell Associates,244 Conn. 269, 270, 709 A.2d 558 (1998). "A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged." Novametrix MedicalCT Page 11457Systems, Inc. v. BOC Group, Inc., 224 Conn. 215, 618 A.2d 25
(1992). "The court must construe the facts in the complaint most favorably to the plaintiff." (Internal quotation marks omitted.)Faulkner v. United Technologies Corp., 240 Conn. 580,693 A.2d 293 (1997). The role of the trial court in ruling on a motion to strike is "to examine the [complaint], construed in favor of the [plaintiff], to determine whether the [plaintiff] [has] stated a legally sufficient cause of action." Napoletano v. CignaHealthcare of Connecticut, Inc., 238 Conn. 216, 232-33,680 A.2d 127 (1996). "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint." (Internal quotation marks omitted.) Walters v. Autuori, 236 Conn. 825,676 A.2d 357 (1996). The court shall not review the essential allegations of the revised complaint for the purpose of deciding whether each count can survive the motion to strike.
Count one of the revised complaint alleges a violation of Conn. Gen. Stat. Sec. 46a-60(a)(1), the Connecticut Fair Employment Practices Act. The plaintiff claims that the defendant's application of its written dress policy discriminates against him based on his gender. Specifically, the plaintiff asserts that although there is a written dress policy permitting the wearing of shorts, the defendant did not allow him to wear shorts because he is a man, and not a woman.
The case of Pik-Wik Stores, Inc. v. Commission on HumanRights and Opportunities, 170 Conn. 327, 365 A.2d 1210 (1976) is instructive in addressing this issue. In Pik-Wik Stores, the defendant stores had a grooming policy that required male employees to have "neat, well groomed hair, off the collar and above the ears" but did not likewise restrict female employees. An applicant for employment refused to comply with this policy and, thus, was not hired, prompting the applicant to bring a claim for discriminatory failure to hire.
In Pik-Wik Stores the Connecticut Supreme Court found that [t]he purpose of (31-126[a]) of the Fair Employment Practices Act is to prohibit employer discrimination based on immutable characteristics such as race, color, national origin, or sex. It further found that a hiring policy, however, which distinguishes on some other ground, such as grooming codes or length of hair, is related more closely to an employer's choice of how to run his business than to equality of opportunity and as such is not impermissible. The court concluded that complaint's loss of employment in this case was predicated on a conscious choice on CT Page 11458 his part not to cut his hair and not on the fact that he was a man.
This court finds that the allegations in count one address grooming standards which are legally permissible. Clearly the policy at issue does not discriminate against employees on the basis of some immutable characteristic, such as race or national origin. Willingham v. Mason Telegraph Publishing Co.,507 F.2d 1084 (5th Cir. en banc).
Count two of the revised complaint is a breach of contract claim. In this count the plaintiff alleges that the defendant breached its written contract with him by not allowing him to wear the shorts authorized in the written dress code.
If, as is alleged in this case, an employer chooses to have a written dress code policy, which allows for the wearing of shorts, and an employee relies on that manual an implied contract may be formed. Although an employer's written policy ". . . under appropriate circumstances, may give rise to an express or implied contract between employer and employee," Finley v. Aetna Life Casualty Company, 202 Conn. 190, 198 (1987), such is not always the case. Furthermore, where, as here, the employer clarified that the grooming policy is not applicable to both genders, the court finds that the allegations of the second count are insufficient to withstand this motion to strike.
Count three of the revised complaint alleges a claim for intentional infliction of emotional distress. To prevail on a claim of intentional infliction of emotional distress, four elements must be established. "It must be shown: (1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiffs distress; and (4) that the emotional distress sustained by the plaintiff was severe." Honan v. Dimyan, 52 Conn. App. 123, 133
(1999). Quoting (Internal quotation marks omitted.) Delaurentisv. New Haven, 220 Conn. 225, 266-67, 597 A.2d 807 (1991).
The defendant argues that the plaintiffs allegations fall short of the type of extreme outrageous behavior which Connecticut case law requires when considering a cause of action for intentional infliction of emotional distress.

CT Page 11459 "Whether the defendant's conduct and the plaintiff's resulting distress are sufficient to satisfy [the elements of the tort of intentional infliction of emotional distress] is a question, in the first instance, for this court. Only where reasonable minds can differ does it become and issue for the jury. Mellaly v. Eastman Kodak Co., 42 Conn. Sup. 17
(1991).
The essential inquiry in determining whether factual allegations in a complaint meet the requirements of the tort of intentional infliction of emotional distress centers upon whether on its face such alleged ". . . conduct exceed[s] all bonds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." Mellaly, Id. at 20, supra, citing N. Prosser W. Keeton, Torts (5th Ed. 1984, § 12 A. 60. This conduct must be exceedingly outrageous. However, where the factual allegations, construed must favorably to the plaintiff, show that the defendant's conduct ". . . is merely insulting or displays bad manners or results in hurt feelings. . ." Mellaly v.Eastman Kodak Co., 42 conn. Sup. 17, 19 (1991), such allegations fall short of satisfying the facial pleading requirements for this tort.
In construing the plaintiffs allegations favorably to the plaintiff, as required in considering this motion, this court finds that although the defendant's conduct as alleged may be considered reprehensible, it falls far short of fitting the mold for casting the die for this particular tort. Furthermore, there are virtually no factual allegations undergirding the plaintiffs claim of emotional distress. See Drew v. K-Mart Corp.,37 Conn. App. 239, 252 cf. Whelan v. Whelan, 41 Conn. Sup. 519 (1991).
Count four of the revised complaint alleges a claim for negligent infliction of emotional distress. To state a claim for negligent infliction of emotional distress in the employment context requires a termination of employment. Morris v. HartfordCourant, 200 Conn. 676, 682 (1986).
The facts alleged in the plaintiffs complaint fail to establish the necessary element of termination required to sustain a cause of action for negligent infliction of emotional distress in the employment context. The plaintiff argues that he was constructively discharged and thus, the element of termination is satisfied. CT Page 11460
 "`Normally, an employee who resigns is not regarded as having been discharged, and thus would have no right of action for abusive discharge.' (Citation omitted). Through the use of constructive discharge, the law recognizes that an employee's "voluntary" resignation may be, in reality, a dismissal by the employer."
 Seery v. Yale-New Haven Hospital, 17 Conn. App. 532, 540
(1989).
A constructive discharge occurs when an employee leaves employment because the employer ". . . renders and employee's working conditions so difficult and intolerable that a reasonable person would feel forced to resign." Seery Id. This court finds that the fourth count contains no factual allegations of conduct by the defendant which would have forced the plaintiff to resign.
 ORDER
The defendant's Motion to Strike Counts One, Two, three and Four of the plaintiff's Revised Complaint is granted.
Clarance J. Jones, Judge.